Charles Balazick and Helen Balazick v. Commissioner.
Balazick v. Commissioner
Docket No. 50142.
United States Tax Court
T.C. Memo 1955-36; 1955 Tax Ct. Memo LEXIS 302; 14 T.C.M. (CCH) 123; T.C.M. (RIA) 55036; February 11, 1955
*302 W. Robert Thompson, Esq., for the petitioners. George J. Rabil, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $469.19 in income tax of the petitioners for 1947, and for 1950 a deficiency of $4,997.12, plus an addition under section 293(a) of $249.86 for negligence. The issues for decision are: (1) Whether the petitioners are entitled to deduct $1,679.77 in 1949, in addition to the amount allowed by the Commissioner, in determining a net operating loss carryback from 1949 to 1947; (2) Whether the Commissioner erred in adding $6,001.50 to the petitioners' income for 1950 on account of a payment made to their son-in-law, George J. Albert; (3) Whether the Commissioner erred in disallowing a deduction of $7,500, alleged to represent one-third of the profits of the petitioners' contracting business for 1950 to which their son was entitled; (4) Whether the Commissioner erred in determining an addition to the tax for 1950 for negligence under section 293(a), and (5) Whether the Commissioner erred in not determining an addition to the tax under section 294(d)(2) for a substantial underestimate *303 of the estimated tax. Findings of Fact The petitioners are husband and wife. They filed joint returns for the taxable years with the collector of internal revenue for the twenty-third district of Pennsylvania. The Commissioner, in determining the deficiency for 1947, allowed a net operating loss deduction which he explained as follows: "A net operating loss deduction resulting from an operating loss sustained in the year 1949 has been allowed in the amount of $6,649.19, computed as follows: "Net operating loss from 1949
$7,893.49
Less: Non-business income
1,244.30
Net operating loss deduction
$6,649.19" The record does not show that the Commissioner erred in determining that net operating loss deduction. The petitioners on their return for 1950 reported a net profit of $12,251.58 from a business described as "Contractor (Highway Construction)." One of the deductions taken in computing that net profit was $383,308.59 described as "other business expenses." One of the items going to make up that total was entitled "sub-contracts" and it included $6,001.50 paid to the petitioners' son-in-law, George J. Albert. Another amount going to make up that total was *304 $7,500 described as "Payments under profit contract" to the petitioners' son, Charles J. Balazick. The Commissioner, in determining the deficiency for 1950, disallowed both of those items with the explanation that neither one represented an allowable deduction. He also disallowed other alleged expenses of the contracting business amounting to $2,000 which are not contested. The petitioners had been engaged for a number of years in the contracting business, particularly in the construction of highways. The petitioner, Charles Balazick, entered into an agreement with the Commonwealth of Pennsylvania Highway Department on April 28, 1950, for the construction of a portion of highway No. 31 near the village of Eighty-Four, Washington County, Pennsylvania, for the total amount of $238,890.03, and the same parties entered into a similar contract on August 14, 1950, for the construction of a portion of highway No. 18 near the Borough of Burgettstown, Washington County, Pennsylvania, for the approximate amount of $428,398.22. George J. Albert, a son-in-law of the petitioners, after negotiating with his father-in-law, made a written proposal to the latter on August 1, 1950, to lay the *305 tile underdrain and outlets required by state regulations on the Burgettstown job for fifty cents a foot. The proposal was accepted, 12,003 feet of tile underdrain were laid, Albert rendered a bill in December 1950 in the amount of $6,001.50, and that amount was paid in full by the petitioners in December 1950. The Commissioner erred in disallowing the $6,001.50 as a deduction of the business in 1950. The petitioners' son, Charles J. Balazick, referred to herein as Charles J., was separated from the Army in January 1950 and was later honorably discharged. He became 21 years of age on February 2, 1950. He had worked part-time for his father before entering the Army on January 18, 1949, and was qualified to operate all kinds of heavy machinery used in the construction work carried on by his father. He had graduated from high school and had attended college for a few months. His parents wrote to him while he was in the Army, telling him that if he would come home and help with the construction business as soon as he was separated from the Army they would pay him regular wages, plus one-third of the net profits of the business. He returned home in January 1950 and thereafter has worked *306 on the construction contracts obtained by his father. He first worked in 1950 in putting the machinery and equipment owned by his parents in good condition. He assisted his father in investigating various proposed highway construction work and in bidding on some of the work, including the two jobs for which his father obtained the contracts in 1950. He then worked long hours on each of those jobs during 1950. He did supervisory work on the jobs subject only to the control of his father, and he also did work such as laboring and operating equipment for which he was paid the regular wage. He was paid $1.50 an hour from May 7 to July 15 and from then until December 9 was paid $2 an hour. His total wages for the year were $2,385.75. Charles drew a check to Charles J. dated December 29, 1950, for $7,500. That check was endorsed by Charles J. and deposited by him in the First National Bank of Jefferson, Pennsylvania, on December 30, 1950. Charles J. gave Charles a check drawn on the First National Bank of Jefferson, Pennsylvania, for $7,518 dated December 30, 1950, which was credited to the account of Charles in that same bank on December 30, 1950. Charles J. gave Charles a signed receipt *307 dated February 24, 1951, as follows: "Received from Dad - 7518.00 Loan paid in full. Charles J. Balazick." Charles paid Charles J. that amount in cash on or about that date. Charles J. reported the $7,500 as a part of his income for 1950. The petitioners filed a Declaration of Estimated Tax for 1950 with the collector of internal revenue for the twenty-third district of Pennsylvania on May 15, 1950. It showed "None" as the estimated tax for 1950. No amended Declaration of Estimated Tax for 1950 was filed. The petitioners reported net income of $14,769.55 and tax due thereon in the amount of $2,294.04 on their return for 1950. The net income included the net profit from the highway construction business and the net profit from a hotel and bar business. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The allegations contain no reference to the year 1949 yet in the opening statement and in the brief for the petitioners the contention made on the first issue is that the petitioners are entitled to a deduction for 1949 of $2,370, of which, they say, the Commissioner allowed $610.23 and disallowed $1,679.77. The item of *308 $2,370 was deducted on the 1949 return under expense as "Business promotion." Counsel for the Commissioner stated that $610.23 of that amount was substantiated and allowed. The petitioners testified that Charles made notes of some expenses of his business during 1949 in a small book described as a diary, he gave the book to the accountant who made up his return, from the items therein the accountant claimed $2,370 as business promotion expense, and the book has been lost. The accountant did not testify and the petitioners did not testify with reference to any particular entry in the book. The record does not show that the Commissioner erred in failing to allow any more of the claimed deduction than the $610.23. The Court has no reason to believe from this record that a larger portion of the total amount claimed was a proper deduction. Therefore there is no occasion to apply the rule of . There is no doubt that Albert was the subcontractor for the tile drain on the Burgettstown job or that he received the stipulated price of $6,001.50 for his work. The check for that amount was charged against the petitioners' bank account on December 30, 1950. One *309 of the contentions of the respondent is that at least $4,000 of the total was turned back to Charles. The testimony is that Albert retained the full amount and never repaid any of it to Charles. The record as a whole supports the contention of the petitioners that the amount was deductible from their income for 1950. The most difficult question in the case is whether and on what grounds the $7,500 paid to Charles J. is deductible in computing the income of the petitioners for 1950. The petitioners and their son handled their affairs very loosely. They did not have writings or proper accounting for all of their transactions, and it is difficult from the record to tell exactly what they were doing. There was no written evidence in the record of the agreement between the parties. The two petitioners and Charles J. testified, however, that the petitioners offered Charles J. his wages, plus one-third of the profits of the contracting business, if he would return from the Army and help with that business. He returned from the Army and helped with the contracting business throughout 1950. He was young but had had considerable experience in the business, and he worked hard for long hours *310 during 1950. There is a suggestion that the construction contracts for 1950 were more profitable than those of prior years so that the profit-sharing contract with Charles J. proved more beneficial to him than might have been anticipated. His mother and father claim that they were equal partners in the business. No partnership returns were filed until 1952 when a partnership return for 1951 was filed. That return reported that the profits were distributable one-third each to Helen, Charles and Charles J., the latter's share being $8,854.05 whereas Charles J. reported for that year only wages received from Charles. Charles J. admits that he was not to share in losses and he had no interest in the considerable quantity of expensive equipment which his father owned and used in the business. Charles drew no wages from the business. The income from the business as shown on the return of the petitioners for 1950, before deducting any share for Charles J., was $19,751.58. One-third of that would be $6,583.86 instead of $7,500. Charles was asked several times to explain how the $7,500 was arrived at, at the end of 1950. He said he estimated it but he failed to explain further. There is no *311 indication that the petitioners agreed or intended to pay Charles J. any more than one-third of the profits, plus wages. There was no attempt made by the parties to make any later adjustment for the fact that Charles J. had received almost $1,000 more than one-third of the reported profits of the business for 1950. One of the adjustments which the Commissioner made in determining the deficiency for 1950 was to disallow $2,000 for engineering claimed on the return as expenses of the contracting business. The expense had nothing to do with the contracting business. The parties have stipulated that the disallowance was correct. This raises the net income from the contracting business for 1950 to $21,751.58, and one-third of that is $7,250.53. Charles J., under the contract as testified to by his parents and himself, would be entitled to no more than that amount in addition to his wages for 1950, and no better solution occurs than to allow that amount as a deduction of the business for 1950. The evidence does not show that the Commissioner erred in determining the addition under section 293(a) for negligence and it shows that there was an underestimate on the Declaration of Estimated *312 Tax so that an addition under section 294(d)(2) is proper. Decision will be entered under Rule 50.